IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WILLIAM BRADLEY,<br><br>v.<br><br>BALTIMORE POLICE DEPARTMENT, *et al*. | Civil Action No. CCB-22-641 |

## MEMORANDUM

William Bradley sued the Baltimore Police Department and several of its officers, alleging that his home was searched and he was arrested pursuant to warrants that were based on affidavits containing false statements. The defendants moved to dismiss Bradley's complaint. The motions have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant the defendants' motions to dismiss.

## BACKGROUND

On February 27, 2019, Abani Sehu called the Baltimore Police Department ("BPD") to report that another driver had brandished a handgun at her when she tried to drive around him. Am. Compl. ¶¶ 28, 29, 31, ECF 38.[1] BPD officers responded, and Sehu explained that she had driven onto the median to bypass a line of cars waiting to turn when someone "pulled over" to block her from advancing. *Id.* ¶¶ 29, 30. After they both made the turn, Sehu stopped alongside the other vehicle and rolled down her window to explain her actions. *Id.* ¶ 31. Apparently not interested in conversation, the driver wordlessly pointed a gun at her before driving on. *Id.*

---

[1] The amended complaint was docketed twice. *See* ECFs 38, 39. There is no difference between the two, and the court considers only the first filing, ECF 38.

1

Sehu told the officers her assailant was a "young white male" with "sandy colored hair." *Id.* ¶ 30. She described his vehicle as "a little white car with some type of stickers on the back . . . [l]ike maybe it was a work vehicle or something," elaborating that it "might have been an American kind of—like a little, almost like a little hatchback kind of car, but small and it was white." *Id.* ¶ 33. Sehu's car happened to be equipped with a camera on the dashboard, and she reviewed her footage of the incident with a second set of BPD officers later that same day. *Id.* ¶ 34. After watching the video, Sehu determined that her assailant actually drove a black Volkswagen GTI. *Id.* But because the dashcam pointed out the car's front windshield, the officers could not make out the other driver's identity, the GTI's license tag, or any part of the exchange between the two drivers. *Id.* ¶¶ 35-36. Sehu did not turn the dashcam over to police. *Id.* ¶ 37.

The next day, February 28, Detective Frank Mundy was assigned to investigate the case. *Id.* ¶ 38. Sehu gave Mundy a copy of some of the dashcam footage and reported a license tag number belonging to a vehicle involved in the event. *Id.* ¶ 39. When Mundy checked the tag number against the Maryland Motor Vehicle Administration's database, he found that the car was a Volkswagen GTI registered to the plaintiff, William Bradley. *Id.* ¶ 41. Following up on the Bradley lead, Mundy determined that Bradley also had a Maryland handgun permit and legally owned three semi-automatic handguns. *Id.* ¶ 42. Mundy continued his investigation and on March 4 retrieved additional video footage of the incident from a building near the intersection. *Id.* ¶ 47. Upon review, Mundy apparently verified that the assault had occurred, but was "unable to ascertain from the video what make or model firearm the suspect displayed." *Id.*[2]

---

[2] The Amended Complaint includes an extremely limited snippet of Mundy's description of the additional video footage, but the court infers from the fact that he was "unable to ascertain [the] . . . make or model [of the] firearm" that Mundy did see *a* firearm, and therefore the additional

With the evidence in hand, on March 5 Mundy applied for a search and seizure warrant ("SSW") for Bradley's home and a statement of charges ("SOC") for Bradley's arrest. *Id.* ¶¶ 48, 58. Mundy submitted substantively identical affidavits to support each application. *See id.* ¶ 55(a). According to Bradley, those affidavits contained false statements and omitted critical facts. *Id.* ¶¶ 48, 49. Bradley alleges "Mundy made use of Plaintiff's name as though Ms. Sehu or other evidence actually identified the Plaintiff as the individual driving the GTI on the day in question, and also repeatedly wrote that his review of Ms. Sehu's dash camera video footage 'confirmed' her reporting." *Id.* ¶ 43. More specifically, Bradley points to three types of supposedly false statement in the affidavits: (1) Bradley was affirmatively identified as the assailant or the GTI's driver, *id.* ¶¶ 48, 55(d), 56(b), 111, 112, 114; (2) Sehu's assailant pointed a black semi-automatic handgun using his right hand, *id.* ¶¶ 55(a), 55(b), 75, 92, 104, 114;[3] and (3) Sehu's dashcam footage "confirmed" her report, *id.* ¶¶ 43, 45, 73, 90, 104, 111, 112, 114.[4] Bradley also criticizes the omission of "exculpatory evidence" from the affidavits but does not explain what that evidence was.[5] *Id.* ¶¶ 120, 216.

---

video verified that the incident did in fact occur. In the absence of any contraindications from Bradley, the court also surmises that the additional video footage shows the gun was pointed from the window of a car that at least looked like a Volkswagen GTI. *Cf.* Am. Compl. ¶¶ 49(a), 55(d). This reading is corroborated by the affidavit, which the court can consider on this motion to dismiss. *See* n.8, *infra*.

[3] Bradley at times conflates the first two false statements, and it is thus unclear whether the "right hand" allegation is an independent falsity about the assailant's use of his right hand or just another type of identification of Bradley allegation. The court reads these in Bradley's favor as two different false statements.

[4] In passing, Bradley also identifies one other supposed falsity: "Ms. Sehu describ[ed] a 'black Volkswagen GTI' in her initial report to Officer Curiolo." Am. Compl. ¶¶ 104, 114.

[5] Bradley makes repeated reference to a photo array administered on March 13, 2019, in which Sehu failed to identify Bradley as her assailant, *see* Am. Compl. ¶ 53, and an interview on the same day in which she allegedly stated for the first time that her assailant held the gun in his right hand, *id.* ¶ 55. Though this evidence can be contrasted with that described in the affidavit, it post-dates

Based on the affidavits, warrants were issued for Bradley's arrest and the search of his home. *Id.* ¶¶ 50, 59, 117. The warrants were executed on March 12, 2019, and BPD seized two of Bradley's legally registered firearms "along with additional property that had not been included in the Affidavit nor could it have been tied to the alleged incident" which Bradley does not describe with particularity. *Id.* ¶ 50. BPD arrested Bradley when it executed the SSW. *Id.* ¶¶ 50, 59. As part of the SSW's execution, Sergeant Kathy Jackson "used her 'supervisor's discretion' to enhance risk factors associated with executing it" and added twenty-five points, allowing BPD to use its "Quick Response Team" to enter Bradley's home. *Id.* ¶ 51. According to Bradley, this risk increase was factually unsupported. *Id.* ¶ 51(a). Jackson wrote a briefing note after the search, stating that "[w]e planned to serve [the warrant] and bring Mr. Bradley in for a statement in hopes to get him to put himself on scene, as his face isn't clear in the photos." *Id.* ¶ 52.  She also stated that "the S[outhern] D[istrict] Commander [Lieutenant Colonel Monique Brown] . . . offered her TAC unit to assist" in the execution of the warrant, and "Major Crimes Commander [Captain Lisa Robinson] . . . advised at this point to . . . utilize SWAT for entry." *Id.* ¶¶ 52(a), (b). It is not clear from the face of the complaint whether the TAC unit or SWAT were actually utilized in the execution of the SSW.

On March 13, 2019, the day after the warrants were executed, Sehu was shown a photo array in which she failed to identify Bradley and maintained that her assailant had "sandy blond hair," though Bradley's hair is "dark brown." *Id.* ¶ 53. Mundy formally interviewed Sehu for the

---

the issuance of the warrants and its omission from the applications is therefore not determinative as to the existence of probable cause.

first time that same day, and Bradley alleges that this interview was the first time she described her assailant pointing the gun with his right hand. *Id.* ¶ 55.

The State's Attorney's Office subsequently prosecuted Bradley. *Id.* ¶ 60. He was initially charged with second degree assault, *id.* ¶ 61, but on August 2, 2019, a Grand Jury returned a true bill of indictment charging Bradley with Assault in the First Degree, Assault in the Second Degree, Use of a Firearm in the Commission of a Crime of Violence, and Wear, Carry, Transport a Loaded Handgun in a Vehicle, *id.* ¶ 65. The charges were eventually *nolle prossed* because, according to Bradley, "Defendants predicated the charges off of unsubstantiated and untruthful assertions." *Id.* ¶ 66. Bradley alleges that, because of his indictment, he "was subjected to home confinement, made to pay substantial attorney's fees to defend himself in this illegitimate matter, ultimately lost his business and marriage, [and] suffered humiliation, degradation, hardship, and substantial mental pain and suffering." *Id.* ¶ 67.

Bradley sued BPD and Defendants Mundy, Brown, Jackson, and Robinson (in their individual and official capacities) on March 15, 2022. Compl., ECF 1.[6] The defendants moved to dismiss, *see* ECFs 34, 35, and Bradley responded by filing an Amended Complaint, Am. Compl., ECF 38.[7] The Amended Complaint alleges fourteen counts: I. Substantive Due Process; II.

---

[6] To this date, Jackson has not been served. Pl.'s Opp'n to Mots. to Dismiss at 19 n.5, ECF 49-1 ("Opp'n"). Bradley has not attempted to show good cause for the delay, and his complaint is therefore dismissed as to Jackson. Fed. R. Civ. P. 4(m). Additionally, the reasons for dismissal as to the other defendants apply equally to Jackson.

[7] Mundy challenges the validity of the Amended Complaint because it was filed after the twenty-one day period for amending as a matter of course and without his express consent. Fed. R. Civ. P. 15(a)(1)(B). The Amended Complaint was filed thirty-two days after the parties' original motions to dismiss, and within the time extension agreed by the parties for Bradley's response to the motions. Consent Mot. to Extend Time, ECF 36. Though the consent motion does not state that time is also extended for an amended complaint, BPD, Brown, and Robinson would have agreed to apply that extension to an amended complaint. Mem. in Supp. of BPD Mot. to Dismiss at 1 n.1,

Procedural Due Process; III. Malicious Prosecution; IV. Failure to Intervene; V. Conspiracy; VI. Supervisory Liability; VII. *Monell* Liability; VIII. State Law Malicious Prosecution; IX. State Law Abuse of Process; X. State Law Intentional Infliction of Emotional Distress; XI. State Law Civil Conspiracy; XII. Violations of Articles 24 and 26 of the Maryland Declaration of Rights; XIII. Violation of the Fourth Amendment; and XIV. Indemnification. *See* Am. Compl. The defendants moved to dismiss, arguing that, even without the allegedly false statements, there was still probable cause to search Bradley's home and to arrest him. *See* Mem. in Supp. of Mundy Mot. to Dismiss, ECF 45-1 ("Mundy Mot."); BPD Mot. They also argue that each Count fails for various independent reasons. *Id.* Bradley opposed both motions. *See* Opp'n. For the reasons that follow, the court will grant both motions to dismiss.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must contain factual allegations that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts

---

ECF 46-2 ("BPD Mot."). The court sees no compelling reason to reject Bradley's amended complaint, and leave to amend is retroactively granted. *See* Fed. R. Civ. P. 15(a)(2).

6

"must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## ANALYSIS

### I. Violation of the Constitution

A plaintiff alleging violations of his federal constitutional rights can bring a cause of action under 42 U.S.C. § 1983. To state a claim, the plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Bradley brings Section 1983 counts alleging substantive and procedural due process violations under the Fourteenth Amendment. Am. Compl. at 15-21. In those counts, Bradley alleges that he was injured when the defendants searched his property pursuant to a warrant that lacked probable cause and seized property discovered in that search, thereby "depriving him of his personal property and right to privacy in his own home in a manner beyond legitimate governmental action" and violating his "cognizable liberty and property interest in the security of his own home and person." *Id.* ¶¶ 87, 89. Bradley explicitly describes the government's alleged transgressions as "seizing two (2) legal registered firearms," a "search, and seiz[ure]," and "an unreasonable and reckless seizure of Plaintiff and his personal property in violation of the Fourth Amendment to the United States Constitution." *Id.* ¶¶ 71, 78, 80, 95, 97. Bradley's procedural due process claim does not include any particularized allegations that the state's procedures for issuing

and executing warrants were "constitutionally inadequate." *Id.* ¶ 108. Instead he alleges that those procedures were subverted by the actions of individuals acting under color of law. *Id.* ("Defendants Jackson's, Brown's, and Robinson's failure to order Defendant Mundy to comply with state and federal law fell below the constitutionally adequate procedures set forth.").

Though presented as due process claims, Counts I and II of Bradley's amended complaint allege violations of the Fourth Amendment and will be analyzed under that Amendment's doctrine. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated"). As the Fourth Circuit recently explained, "[w]hen an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures is violated." *Smith v. Travelpiece*, 31 F.4th 878, 884 (4th Cir. 2022). Moreover, the Fourth Amendment's "balance between individual and public interests always has been thought to define the process that is due for seizures of person or property in criminal cases." *Id.* at 884 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)). Bradley also brings one count (Count XIII) directly alleging Fourth Amendment violations, although the only injury he alleges is based on his "false[] arrest." Am. Compl. ¶ 231. The court will consider all of the Fourth Amendment violations Bradley has alleged, including the search of his home, the seizure of evidence therein, and his arrest, as a single claim.

8

In *Franks v. Delaware*, the Supreme Court set forth the framework for analyzing Section 1983 claims alleging Fourth Amendment violations predicated on dishonesty in a warrant. *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). To succeed on a *Franks* claim, Bradley first "must allege that defendants 'knowingly and intentionally or with a reckless disregard for the truth' either made false statements in their affidavits or omitted facts from those affidavits, thus rendering the affidavits misleading." *Evans v. Chalmers*, 703 F.3d 636, 650 (4th Cir. 2012) (quoting *Franks*, 438 U.S. at 155-56). Second, he must "demonstrate that those 'false statements or omissions are material, that is, necessary to' a neutral and disinterested magistrate's authorization of the search." *Id.* (quoting *Miller*, 475 F.3d at 628 (internal quotations and alterations omitted)).

As to the first prong, a knowing and intentional or reckless misstatement or omission, the court will assume without deciding that Bradley has made a sufficient showing of intent to mislead.

*Franks*' second prong requires an analysis of materiality. "To determine materiality, we 'excise the offending inaccuracies . . . and then determine whether or not the corrected warrant affidavit would' provide adequate grounds for the search" or arrest. *Evans*, 703 F.3d at 651 (quoting *Miller*, 475 F.3d at 628). If "probable cause for [the] arrest [or search] existed even in the absence of the purported misrepresentation," then there is no Fourth Amendment violation. *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994). In this case, stripped of the challenged statements, and considering the alleged omissions, the affidavits[8] state the following facts: (1) Sehu described

---

[8] Mundy included copies of the affidavits as exhibits to his Motion to Dismiss. *See* SSW Application, ECF 45-2; SOC Application ECF 45-3. On a motion to dismiss, the court may consider "document[s] submitted by the movant that w[ere] not attached to or expressly incorporated in a complaint, so long as the document[s] w[ere] integral to the complaint and there is no dispute about the document[s]' authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705

9

her assailant as having "sandy blond hair" while Bradley's hair is "dark brown"; (2) after reviewing video of the incident, Sehu changed her initial description of her assailant's car and identified it as a make and model matching a car registered to Bradley; (3) Sehu identified her assailant's license tag number, which matched the car registered to Bradley; (4) Sehu's description of the gun that was brandished at her was similar to several guns registered to Bradley; (5) two videos showed a car matching the description of Bradley's at the scene of the incident and one of the videos showed the driver of that car brandishing a firearm at Sehu, although the driver's identity and the specific type of gun could not be determined; and (6) Bradley lived in close proximity to the location of the alleged assault. These revised facts are sufficient to establish probable cause to search Bradley's house and to arrest him.[9]

Probable cause for a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *Evans*, 703 F.3d at 653. Given the undisputed evidence that a GTI registered to Bradley was involved in the assault, and that Bradley, who lived nearby the location of the assault, legally owned several firearms, there was a reasonable probability that the firearm used in the crime would be present at Bradley's home.

There is probable cause for an arrest warrant if there is "evidence 'to warrant a man of

---

(4th Cir. 2007)). Bradley restates this rule and contends that the court cannot consider extrinsic evidence, but nowhere argues that the affidavits submitted by Mundy are not authentic. *See* Opp'n at 5. The court therefore may consider the affidavits without converting the motion to one for summary judgment. *Goines*, 822 F.3d at 166.

[9] To be clear, the court does not suggest that this affidavit was written with the clarity and thoroughness that should be expected from the BPD. A reviewing judge should be able to determine the exact source of the information included, whether a conversation with the victim, review of video footage, MVA records, or other sources. If video footage is said to confirm an event, the BPD should explain how it does so. Nonetheless, a *Franks* violation has not been shown.

10

reasonable caution in the belief that an offense has been or is being committed.'" *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Here, considering the "totality of the circumstances," *id.* at 230, there was sufficient evidence in the revised affidavit to support a finding of probable cause. Direct evidence from Sehu and the video footage placed Bradley's car at the scene of the crime and showed that someone in the driver's seat of that car was the perpetrator. Moreover, Bradley had access to the instrumentality of the crime (a gun). A person of reasonable caution would be justified in concluding that the individual driving Bradley's car under these circumstances probably was Bradley himself. The facts that Bradley was not definitively identified as the perpetrator of the crime and that Sehu described a different hair color (sandy blond rather than dark brown) than Bradley's do not negate probable cause to arrest him. In *United States v. Colkley*, the Fourth Circuit considered a *Franks* challenge to the validity of an affidavit that allegedly "failed to note that numerous witnesses did not identify him in a photographic spread" and misstated the suspect's height as described by witnesses. 899 F.2d 297, 299 (4th Cir. 1990). The district court held a hearing and determined that the omission and misstatement did not negate probable cause. *Id.* The Fourth Circuit affirmed, holding that circumstantial evidence suggesting that the suspect had committed the crime was enough for probable cause, even in the absence of an affirmative identification and the witnesses' failure to pick him out of a lineup. *Id.* at 302. In this case, the affidavits, if revised to include the alleged omissions and excise the alleged lies, still contain sufficient evidence to establish probable cause to search Bradley's house and to arrest him. Therefore, under *Franks*, Bradley's Fourth Amendment rights were not violated.

Bradley also alleges that BPD seized "additional property that had not been included in the

*Affidavit* nor could it have been tied to the alleged incident." Am. Compl. ¶ 50. But Bradley never explains what "additional property" was seized, rendering an analysis of whether it complied with the warrant impossible. Even considering the "inventory" included in the copy of the warrant submitted by Mundy, the items seized all relate to the alleged crime. *See* SSW Application at 7. Specifically, BPD seized three guns, hundreds of rounds of ammunition, several ammunition magazines, carrying cases for the guns, a camouflage backpack, a tactical vest, ballistic body armor, and Bradley's handgun carry permit. *Id.*; *see United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) ("Courts must refrain from interpreting warrant terms in a 'hypertechnical' manner, and should instead employ a 'commonsense and realistic' approach.").[10] There was no Fourth Amendment violation with regard to the items seized in the search.

Because Bradley has not alleged a violation of his constitutional rights, he has failed to state a claim under 42 U.S.C. § 1983. As a result, the counts based on a constitutional violation, Counts I, II, III, IV, V, VI, VII, and XIII, will be dismissed.

**II. Violation of State Law**

Bradley also alleges that the defendants violated Maryland common law and the Maryland Constitution's Declaration of Rights. Two of these claims, Counts VIII (malicious prosecution) and XII (Articles 24 and 26 of the Declaration of Rights), expressly rely on the same probable cause argument Bradley asserted in support of his Fourth Amendment claims and, as explained below, must therefore be dismissed on the same basis. Am. Compl. ¶¶ 179, 213. Bradley's

---

[10] Bradley's allegations regarding the increase in risk factors assigned to the execution of the warrant are similarly unavailing. *See* Am. Compl. ¶ 51. Bradley does not identify how the use of the "Quick Response Team," even if unjustified, violated his constitutional rights. The complaint suggests that BPD used a "knock-and-announce" warrant, *id.* ¶ 52, but does not allege any unconstitutional acts by the officers in its execution.

allegations also fail to state a claim as to the remaining counts, and they will be dismissed for the reasons that follow.

### A. State Law Counts Based on Lack of Probable Cause

A claim of malicious prosecution in Maryland requires the plaintiff to allege that, among other things, there was an "absence of probable cause for the proceeding." *Exxon Corp. v. Kelly*, 281 Md. 689, 693 (1978). To the extent that the defendants, as opposed to the state prosecutor, can be understood to have "instituted or continued" the criminal proceeding against Bradley, they had probable cause to do so. Count VIII will therefore be dismissed.

Bradley's Article 24 and 26 claims allege that his rights were violated when he was "falsely arrest[ed] and imprison[ed]," and his liberty was denied "without probable cause." Opp'n at 33. Bradley's claims require an unconsented deprivation of liberty without legal justification. *Heron v. Strader*, 361 Md. 258, 264 (2000). Bradley was arrested based on probable cause, and any deprivation of his liberty was therefore legally justified. Count XII will be dismissed.

### B. Abuse of Process

Maryland's abuse of process tort requires the plaintiff to show: (1) "the defendant wilfully used process after it has issued in a manner not contemplated by law"; (2) "the defendant acted to satisfy an ulterior motive"; and (3) "damages resulted from the defendant's perverted use of process." *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 38 (1997) (internal citations omitted). The Court of Appeals of Maryland explained that abuse of process and malicious prosecution are "essentially different and independent actions" because "abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued . . . while actions for malicious prosecution . . . are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without

13

probable cause." *Walker v. Am. Sec. & Trust Co. of Wash., D.C.*, 237 Md. 80, 87 (1964). Bradley does not allege any specific actions by any of the defendants misusing the criminal process after it was issued. Instead, Bradley restates his allegations that "Officer Defendants fabricated evidence to frame Plaintiff for a crime that he did not commit," including "author[ing] the Affidavit . . . which included utter falsities and exaggerated accounts of Ms. Sehu," or otherwise "knowingly falsifying allegations against Plaintiff." Am. Compl. ¶¶ 191-93. But falsifying evidence or allegations to institute a prosecution are pre-process actions that would relate to malicious prosecution, not abuse of process. With no allegations to show how the defendants misused the criminal process *after it was issued*, Bradley does not state a claim for abuse of process. Count IX will therefore be dismissed.

### C. Intentional Infliction of Emotional Distress

An intentional infliction of emotional distress claim includes four elements: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress was severe. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000) (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). Each element "must be pled . . . with specificity." *Id.* (quoting *Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175 (1989)). Bradley fails to plead facts sufficient to state a claim for intentional infliction of emotional distress because he has pled neither extreme and outrageous conduct nor severe emotional distress. First, the court has already determined that the defendants did not lack probable cause for their search and arrest. A search or arrest made with probable cause ordinarily would not be considered "extreme and outrageous." *See Branch v. McGeeney*, 123 Md. App. 330, 351-52 (1998). Second, and more significantly, Bradley pleads no

specific allegations regarding his emotional distress. Though he states that he "has suffered, and continues to suffer, loss of liberty, mental pain and suffering, mental anguish, emotional distress, humiliation, dissolution of his marriage, and loss of enjoyment of life," Am. Compl. ¶ 202, these general statements of distress do not state a claim under Maryland law.[11] Bradley does not explain "with reasonable certainty the nature, intensity or duration of the alleged emotional injur[ies]." *Manihki*, 360 Md. at 370. Bradley has not satisfactorily demonstrated that his distress was "severe," and Count X will be dismissed.

### D. Civil Conspiracy

Civil conspiracy involves "(1) [a] confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) [a]ctual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007). Even assuming Bradley's conclusory allegation that "Defendants acted in concert with each other and with other co-conspirators," Am. Compl. ¶ 204, is enough to satisfy the first element, as the court's analysis so far has demonstrated, Bradley has not sufficiently alleged any unlawful or tortious act done by the defendants. Civil conspiracy is not a standalone claim; it will not "independently sustain[] an award of damages in the absence of other tortious injury to the plaintiff." *Id.* (quoting *Alleco Inc. v. The Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189 (1995)). Having failed to plead any tortious or unlawful act, Bradley cannot state a claim for civil conspiracy, and Count XI will be dismissed.

### E. Indemnification

Bradley's indemnification count alleges that "Defendant BPD is required to indemnify any and

---

[11] The court does not doubt that Bradley suffered emotional injury. The complaint does not, however, meet the very strict standards for the Maryland tort of intentional infliction of emotional distress.

all of the individual defendants against whom a judgment is entered in this case." Am. Compl. ¶ 245. The court has now determined that all of Bradley's other claims must be dismissed. There is nothing left for BPD to indemnify and Count XIV will therefore be dismissed.

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss will be GRANTED.

A separate order follows.

   9/28/2023                                                                   /s/
Date                                                                               Catherine C. Blake
                                                                                    United States District Judge